IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| KAREN J. PAUGH, as guardian ad litem and natural mother of B.A.P. and K.M.P., minors; DONALD R. PAUGH, Sr., individually and ELIZABETH A. PAUGH, heirs of DAVID R. PAUGH, deceased, | ) ) ) ) ) ) | Case No. CV-07-39-S-BLW **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ROGER OTTMAN, M.D.; MERCY MEDICAL CENTER, an Idaho Corporation; PAUL CHRISTENSEN, P.N.P.; DONALD G. RAU, M.D.; SALTZER MEDICAL GROUP, an Idaho Corporation; JOHN H. TRUSKA, M.D.; and JAMES R. DZUR, M.D. | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## INTRODUCTION

The Court has before it Defendants' Motion to Exclude Expert Disclosures of Peter J. Julien, M.D. (Docket No. 51) and Defendants' Motions for Summary Judgment (Docket No. 46 and 47) . For the reasons expressed below, the Court will grant in part and deny in part the Motion to Exclude Expert Disclosures of Peter J. Julien, and grant the Motions for Summary Judgment.

**Memorandum Decision and Order - 1**

## BACKGROUND

Prior to his death, decedent, David Paugh was considered to have been in excellent health.  Several weeks before he died, Mr. Paugh had experienced worsening symptoms of chest congestion, cough, chest discomfort, and shortness of breath.  On March 7, 2005, Mr. Paugh sought treatment from Paul Christensen, L.N.P., at the Saltzer Medical Group Quick Care facility in Nampa, Idaho.  Mr. Christensen ordered a chest x-ray which was read by Defendant, Donald G. Rau, M.D.

On March 14, 2005, Mr. Paugh was admitted to the intensive care unit at Mercy Medical Center after fainting at his home and being taken to the Mercy Medical Center emergency room by ambulance.  At Mercy Medical Center he came under the care of Roger Ottman, M.D., emergency room physician and then James R. Dzur, M.D., an ICU physician.  A chest x-ray was ordered and was read by Defendant, John Truska, M.D.

Mr. Paugh remained in the hospital overnight and at approximately 7:45 p.m. on March 15, 2005, he suffered a respiratory arrest from which he could not be resuscitated.  An autopsy performed on March 16, 2005 found the cause of death to be pulmonary emboli.   This action was subsequently filed alleging that the Defendants' malpractice led to Mr. Paugh's death.

**Memorandum Decision and Order - 2**

On November 16, 2007, two days before the expert witness disclosure deadline set by the Court's Case Management Order, Plaintiffs disclosed Peter J. Julien, M.D. as an expert witness.  Dr. Julien's expert report did not disclose how he familiarized himself with the local standard of care.   Plaintiff's Third Supplemental Expert Witness Disclosures, dated February 11, 2008, disclosed for the first time that Dr. Julien became familiar with the local standard of care in Boise, Idaho in March 2005 by talking with Vicken Garabedian, M.D.   However, the substance of the process of familiarization was first set forth in Plaintiff's Seventh Supplemental Expert Witness Disclosure, which was docketed on March 5, 2008.

Defendants Rau and Truska filed separate Motions for Summary Judgment on April 1, 2008.  Defendant Truska simultaneously  filed a Motion to Exclude Expert Disclosures of Peter J. Julien, M.D. on April 1, 2008, and Defendant Rau later joined in that motion.

## ANALYSIS

### I.    Motion to Exclude Expert Disclosures

Defendants move to exclude the expert disclosures of Plaintiff's expert, Peter J. Julien, M.D.  Defendants claim that Dr. Julien's disclosure and the supplemental offerings submitted in connection therewith fail to set forth an

**Memorandum Decision and Order - 3**

adequate foundation under Idaho's medical malpractice statute, and that the anticipated testimony of Dr. Julien will not assist the trier of fact in determining key factual issues.

Defendants' argument is two-fold: First, Defendants contend that Dr. Julien's supplemental disclosures produced on February 11 and March 5, 2008, were not proper under Rule 26(e); Second, Defendants contend that Dr. Julien was not familiar with the applicable standard of care as required under Idaho Code § 6-1012, and therefore Dr. Julien lacks an adequate foundation to qualify as an expert witness under Idaho Code § 6-1013.

### A.    Supplemental Disclosures

Within the deadline set by the Court, Plaintiffs submitted an expert disclosure of Dr. Julien, a Board Certified Radiologist.  In that disclosure, Dr. Julien expresses his expert opinion that Dr. Rau's interpretation of Paugh's chest x-ray,  "describing 'Borderline heart size and mild prominence of the pulmonary vascularity' without suggesting the diagnosis of pulmonary hypertension and without including in the differential pulmonary emboli is below the standard of care."  *Plaintiff's Expert Witness Disclosures*.  (Docket No. 37).  Dr. Julien also expresses his expert opinion, with regard to Dr. Truksa,  that "the lack of diagnosis of pulmonary hypertension and elevated right-sided heart pressures and the lack of

**Memorandum Decision and Order - 4**

inclusion of pulmonary emboli in the differential diagnosis is below the standard of care." *Id.*

Rule 26(a)(2)(A) requires disclosure of the identity of any expert witness, and Rule 26(a)(2)(B) requires the expert to prepare a report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor." The rules also anticipate that circumstances may arise where it is necessary to supplement an expert's report. In this regard, Rule 26(a)(2)(C) requires that the parties "shall supplement these [expert reports] when required under subdivision (e)(1)." Under subdivision (e)(1), a party is required to supplement whenever "the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

The sanctions for failing to comply with these provisions are set forth in Rule 37(c)(1). Under that Rule, a party that "without substantial justification" fails to disclose information required by Rule 26(a), or fails to abide by the supplementation provisions of Rule 26(e)(1), "is not, unless such failure is harmless, permitted to use as evidence at a trial . . . information not so disclosed." The burden of proving substantial justification and harmlessness lie with the party seeking to avoid sanctions. *See Yeti by Molly LTD. v. Deckers Outdoor*

**Memorandum Decision and Order - 5**

*Corporation*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Supplementation under Rule 26(e)(1) means "correcting inaccuracies, or filling in the interstices of an incomplete report based on information that was not available at the time of the initial disclosure."  *Keener v. United States,* 181 F.R.D. 639, 640 (D.Mont. 1998).  There is not a true supplementation when there is a "dramatic, pointed variation" between the supplementation and the original, and the information relied on in the supplementation was available at the time of the original report.  *Id., See also, Schweizer v. Dekalb Swine Breeders, Inc.* 954 F.Supp. 1495 (D. Kansas 1997) (excluding supplemental report of expert containing new opinions when there was no reason the opinions could not have been expressed in the expert's original report).

In this case, Plaintiffs submitted supplemental disclosures on February 11, 2008 and March 5, 2008.  The Plaintiffs' February 11 disclosure set out the manner in which Dr. Julien attempted to familiarize himself with the local standard of care as it existed in Boise, Idaho during March of 2005.   Dr. Julien accomplished this by speaking via telephone with Vicken Garabedian, M.D., a board certified radiologist, practicing in Boise, Idaho.   The March 5 disclosure confirms that his discussions with Dr. Garabedian led him to conclude that the standard of care in Boise, Idaho during the relevant time period did not vary from the national

**Memorandum Decision and Order - 6**

standard of care with which he was familiar and about which he had already opined in his original expert witness report.

The problem with the supplemental disclosures, is that they include a new opinion not previously disclosed prior to the Court's expert witness disclosure deadline.   The conversation with Garabedian did not change Dr. Julien's previously stated opinion that Dr. Rau and Truksa's medical care fell short of the national standard of care.   Rather, it generated a new opinion that the local standard of care in Boise, Idaho was the same as the national standard of care.   As such, the March 5 supplemental disclosure was not true supplementation, but the offering of a new, additional opinion.

This Court has previously rejected a proposed "supplementation" of an expert's report when it was in fact a new opinion.  In *Snake River v. Pacificorp*, CIV-96-308-E-BLW, the plaintiff's expert filed his original Rule 26 report on damages in an antitrust case without mentioning the "spot market theory" of damages.  After the deadline for expert disclosures had passed, the expert filed a "supplementation" mentioning for the first time this new theory of damages.  The Court rejected the supplementation, holding that it "was not a mere correction of inaccuracies or the 'filling in' of an incomplete report."  *Id.* at p. 6.  The Court also found that plaintiffs failed to carry their burden of showing substantial justification

**Memorandum Decision and Order - 7**

and harmlessness as required by *Yeti by Molly*, discussed above

The same analysis applies here.   The March 5, 2008 supplemental report "was not a mere correction of inaccuracies or the 'filling in' of an incomplete report."   It was the stating of a new opinion about the local standard of care. While the Plaintiff has shown some justification for not obtaining this opinion earlier, their showing does not rise to the level of substantial justification and is more properly considered in determining whether the local standard of care is indeterminable, as discussed below.   The Plaintiff has, in any event, failed to show that the late disclosure was harmless.   Accordingly, the supplemental reports, to the extent they state new opinions, are excluded under Rule 37(c)(1).

In resolving the Defendants's motions for summary judgment and determining whether Dr. Julien is qualified as an expert witness to testify about the standard of care as required in Idaho Code §§ 6-1012 et seq.   the Court will only consider Dr. Julien's initial disclosure.

## II.   Motions for Summary Judgment

### A.   Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the

"principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.*  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

**Memorandum Decision and Order - 9**

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

### B.    Idaho Code §§ 6-1012 and 6-1013

Defendants contend that Dr. Julien's opinion should be rejected under Rule 702 and summary judgment granted, because Dr. Julien had not familiarized himself with the local standard of care in Nampa, Idaho in March 2005 as required by Idaho Code § 6-1012. The Idaho Legislature has imposed the requirement that a Plaintiff,

> must, as an essential part of his or her case in chief, affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence, that such defendant then and there negligently failed to meet the applicable standard of health care practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence of such physician. . . .

Idaho Code § 6-1012. The Idaho Supreme Court has interpreted this statute to require a plaintiff to affirmatively prove by direct expert testimony that the health care provider negligently failed to meet the community standard of health care, as it existed at the time and place of the alleged negligent act. *Ramos v. Dixon*, 156

**Memorandum Decision and Order - 10**

P.3d 533 (Idaho, 2007) (citing *Dulaney v. St. Alphonsus Medical Center*, 45 P.3d 816 (Idaho, 2002)); *McDaniel v. Inland Northwest Renal Care Group-Idaho, LLC.*, 159 P.3d 856, 859 (Idaho, 2007); *Edmunds v. Kraner*, 136 P.3d 338, 345 (Idaho, 2006). The statute is both site specific and time specific. *Gubler v. Boe*, 815 P.2d 1034 (Idaho, 1991).

"Community" is further defined in the Code as "that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided." I.C. § 6-1012. The Idaho Supreme Court has determined that "Idaho Code § 6-1012 precludes assuming that the standard of care is uniform throughout Idaho," and that "merely putting an out-of-area expert in contact with an Idaho physician is not sufficient" to establish actual knowledge of the local community standard of care. *Ramos*, 156 P.3d at 539.

Additionally, Idaho Code § 6-1013 sets forth the means through which a party must prove the essential elements of a medical malpractice claim:

> The applicable standard of practice and such a defendant's failure to meet said standard must be established in such cases by such a plaintiff by testimony of one (1) or more knowledgeable, competent expert witnesses, and such expert testimony may only be admitted in evidence if the foundation therefor is first laid, establishing (a) that such an opinion is actually held by the expert witness, (b) that the said opinion can be testified to with reasonable medical certainty, and (c) that such expert witness possesses professional knowledge and expertise coupled with actual knowledge of the applicable said community standard to which his or her expert opinion testimony is

addressed....

Idaho Code § 6-1013.

###    C.    *Hoene v. Barnes* **and the Problem of Indeterminability.**

Despite its clear intent to impose a rigid local standard of care standard in

medical malpractice cases, the Idaho legislature also recognized that in many

instances it may be impossible to identify a local physician who is willing to offer

an opinion about the local standard of care where such testimony will be used in a

medical malpractice action against a fellow doctor in the same medical community.

Thus, a plaintiff may look to the standard of practice in similar Idaho communities

if the standard of practice in the subject Idaho area is indeterminable.  Specifically,

the applicable portion of Idaho Code § 6-1012 states that "[i]f there be no other

like provider in the community and the standard of practice is therefore

indeterminable, evidence of such standard in similar Idaho communities at said

time may be considered." I.C. § 6-1012.

The Idaho Supreme Court addressed the problem of indeterminability under

the statute in *Hoene v. Barnes*, 828 P.2d 315 (Idaho, 1992).  In *Hoene*, the court

determined that there were no other like providers in Idaho because the defendant

physician's practice was highly specialized and the only other physicians

performing the medical procedure in question were all in the same practice group

**Memorandum Decision and Order - 12**

with the defendant and were thus considered one provider under the statute.  *Id*. at 316.  The standard of health care in the community was therefore considered indeterminable.  *Id.*   Since there were no other similar Idaho communities, it appeared that the Plaintiff could not comply with the local standard of care requirements of I.C. §§ 6-1012 and 1013.  However, rather than conclude that the Idaho legislature intended to grant a physician immunity from suit in these unique circumstances, the court deemed the statutes inapplicable and looked to the common law rule which existed prior to the enactment of I.C. §§ 6-1012 and 1013.  *Id.* at 317-19.   The court determined that the common law rule required that a defendant physician be judged by the standard of care "exercised by competent physicians and surgeons in the same or like locality,"  *Id.* at 319 (citing *Flock v. J.C. Palumbo Fruit Co.,* 63 Idaho 220, 230 (1941)).   However, the common law rule did not require that the similar community be in Idaho.  The Court then went on to construe the plaintiff's expert opinions, and all reasonable inferences derived therefrom, liberally in plaintiff's favor and concluded that the opinions adequately demonstrated actual knowledge of the national standard of practice for physicians in the defendant physician's area of specialty, including the standards in localities similar to the defendant's community of practice.  The trial court's grant of summary judgment to the defendant was therefore reversed.

**Memorandum Decision and Order - 13**

### D.  Indeterminability and the Facts of this Case.

The Court is persuaded that the rationale in *Hoene* applies here.  The radiologists in Nampa, Idaho all practice together,  are part of one business entity, and are thus considered one provider.  Plaintiffs made a good faith, albeit unsuccessful, effort to contact radiologists in Nampa.  *See Affidavit of Byron V. Foster filed April 25, 2008.*  Thus, the standard of health care in Nampa, Idaho was indeterminable under the statute.

Under these circumstances, § 6-1012 would require that evidence of the standard of care in "similar Idaho communities" be considered.  Recognizing this responsibility, Plaintiffs attempted to contact every radiology group in every like-sized Idaho community.[1]   However, they were unable to locate physicians in similarly situated Idaho communities willing to testify on their behalf.

The Court sees no reasoned difference between the quandary in which the Plaintiff's find themselves here and the problem confronted by the Supreme Court in *Hoene*.  Simply put, the statutes, if applied literally, leave the Plaintiff without a

---

[1] The Court has some concern that the Plaintiff's efforts was limited to having a fax sent to every radiology group in every like-sized community in Idaho.   The fax inquired about their willingness to provide information about the local standard of care in their area.   However, counsel for Plaintiff indicates that he has used this method successfully in the past in other cases.   Given the reluctance of doctors and other professionals to offer expert opinions about the malpractice of others in their profession, the Court cannot conclude that the Plaintiff's effort was anything but a good faith effort to satisfy its obligations under the statute.

**Memorandum Decision and Order - 14**

remedy.  To avoid this unjust result, the Court will follow the lead of the Idaho

Supreme Court in *Hoene,* deem the statutes inapplicable and hold the Plaintiff to

the common law rule.  Thus, the Plaintiff here could survive the Defendants'

motions for summary judgment if Dr. Julien based his opinion on his familiarity

with the national standard of care and the standards in localities similar to the

community ordinarily served by Mercy Regional Medical Center – regardless of

whether those communities are within the state of Idaho.

Even under this standard, however, Dr. Julien's expert witness report falls

short.[2]  In the present case, Dr. Julien's expert witness report indicates that the

interpretation of Mr. Paugh's x-ray by Drs. Rau and Truksa was "below the

standard of care."  *See Plaintiff's Expert Witness Disclosures*. (Docket No. 37).  He

states that his opinion is based upon over 30 years of experience practicing

radiology.  *Id.*  He then explains his academic career and his experience

interpreting many thousands of chest x-rays.  *Id.*  However, he does not indicate

that he had actual knowledge of the standards of health care practiced by board

certified radiologists in March 2005 as those standards applied to the care and

---

[2] Recall that the Court determined above that the supplemental reports, to the extent they state new opinions, are excluded under Rule 37(c)(1).  Thus, the Court is only considering Dr. Julien's initial disclosure in resolving the Defendants's motions for summary judgment. Notably, the Court is therefore precluded from considering Dr. Julien's subsequent affidavits which attempt to explain his opinion that, in March 2005, there was a national standard of health care practice in the area of reading, reporting and interpreting chest x-rays.

**Memorandum Decision and Order - 15**

treatment of patients with conditions similar to David Paugh.  Even more significant is the lack of any indication that Dr. Julien has actual knowledge of the standards of practice for radiologists in localities similar to the community ordinarily served by Mercy Regional Medical Center – whether that community is in or outside the state of Idaho.  This is the critical  *Hoene* inquiry, and there is no indication that Dr. Julien has the knowledge and background required by that case. Indeed, Dr Julien does not reference a standard of care other than to state that Drs. Rau and Truksa's interpretation of Paugh's x-ray was below some undefined standard of care.

Accordingly, even construing the record liberally in Plaintiff's favor, including all reasonable inferences that may be drawn from the record, the Court must conclude that summary judgment is appropriate.  Dr. Julien's report simply fails to demonstrate familiarity with the applicable standard of care for the appropriate time period.  Dr. Julien therefore lacks an adequate foundation to qualify as an expert witness in this matter.  Accordingly, the Court will grant the motions for summary judgment.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion to Exclude Expert Disclosures of Peter J. Julien, M.D. (Docket No. 51) shall be,

and the same is hereby, GRANTED IN PART, and DENIED IN PART as explained above.

IT IS FURTHER ORDERED that Defendants' Motions for Summary Judgment (Docket No. 46 and 47) shall be, and the same are hereby, GRANTED.

DATED: **July 3, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 17**